## STATE v. HERSHBERGER et.

Juvenile Court, Wayne County.

No. 2841.   Decided April 2, 1958.

E. Guy Hammond, Cuyahoga Falls, O. Henri Corvington, Bernard J. Roetzel and Clarence A. May, Akron, for defendants.

James K. Leedy, Pros. Atty., Wooster, for plaintiff.

(YOUNG, Jr., J, of the Juvenile Court of Huron County, sitting by assignment as Juvenile Judge of Wayne County.)

## OPINION

By YOUNG, Jr., J.

This matter is a charge of contempt of court. Although it bears a separate caption and case number, it grows out of and is an inseparable part of a neglect case, styled "In the Matter of Sammy Hershberger, alleged Neglected Child," Cause No. 2835.

The neglect case was originally commenced on November 26, 1957, by the filing of a complaint by Raymond C. Sidle, the County School Attendance Officer, alleging that Sammy Hershberger was a neglected child, in that his parents refuse to provide him with proper and necessary education.

Citations were issued to the parents of the child, who are denominated as the defendants in this action, requiring them to appear before the court on December 9, 1958. The child, by counsel, moved for a thirty day continuance. Thereafter, on December 16, by agreement, the case was continued until January 22, 1958. This continuance was granted upon the representation of counsel that efforts would be made to have schooling arranged for the child.

On January 22, 1957, the defendants and counsel again appeared but the child was not with them. The Attendance Officer and a Deputy Sheriff were sent to the child's home to bring the child into court, but were unable to find him.

The Court then continued the matter upon its motion until January 29, 1958. New citations were issued to and served upon the defendants, requiring them to appear in court at 9:00 A. M. on that date and bring the child with them. In response thereto, on January 29

1958, the defendants and the child appeared in court, with counsel, and the matter was heard upon the evidence and stipulations of counsel. At the close of the hearing, the Court stated in open court that the child was found neglected, and committed temporarily to the Wayne County Child Welfare Board. The hearing was then recessed while the Executive Secretary of the Board was called. Shortly thereafter the Court was advised that the Secretary was out of the County, and would not return until evening. Court was then reconvened, and counsel and the defendants were told that the child might return home with the defendants to stay until the representative of the Child Welfare Board came for him. Immediately thereafter, the following entry was made upon the Journal of the Court.

"This matter came on for hearing on the 29th day of January 1958, the parents of said child having been duly served with citation according to law and said parents and said child, being present in person and with counsel, and it appears that all interested persons are before the Court. The Court finds' from the evidence adduced that the said Sammy Hershberger is a neglected child in that his parents refuse to provide him with proper and necessary education and is in all respects within the statutes pertaining to neglected children.

"It is therefore ordered and adjudged that said child be made a ward of the Court, and temporarily committed to the Wayne County Child Welfare Board, to be received, cared for, and educated according to law."

This order is unreversed and has not been appealed from, and the time for filing a motion for new trial or a notice of appeal has long since expired. The order is therefore final and conclusive upon all of the parties.

A few days after this order was made, the Executive Secretary of the Child Welfare Board advised the Court that he had been unable to get custody of the person of the child.

It should be mentioned that this case is one of five cases involving five different children. Two of the five children came with the representative of the Child Welfare Board without question; .one of the children refused to go with the representative of the Board, and his parents sat silently by; the remaining two children could not be found, although the representative of the Board made more than one trip to their homes.

The Executive Secretary then filed charges of contempt in the court, and the Court made an order requiring the defendants to appear on March 12, 1958, to show cause why they should not be punished as for a contempt for their disobedience of the order of the court. The court also ordered that notice of the rule and hearing be served upon the defendants, and this was done.

At the time set, the defendants appeared in court. The Executive Secretary of the Child Welfare Board testified as to his efforts to gain custody of the child, and his failure to do so. The defendants were given an opportunity to offer any testimony or explanation that they desired. The defendant John P. Hershberger stated that his religious

convictions would not permit him to give his child up. He also stated that when he left his home to come to court, the child was there. The defendant Salome Hershberger said nothing.

The Court then stated to the defendants that they had shown no cause why they should not be punished as for contempt; that as the contempt consisted of a failure to do an act which could still be performed, that is, to permit the Child Welfare Board to have custody of the child, that they should stand committed to the County Jail until the act was performed. An order was entered upon the Journal accordingly, and a warrant was issued to the Sheriff. At the same time, the Court issued a warrant to the Sheriff to arrest the child, but this warrant had not been returned at the time of hearing on defendants' motion for new trial on March 25, 1958 nor had the child been taken into custody.

Thereafter a motion for a new trial was filed, and shortly after that, an amended motion for new trial was filed and argued to the Court. This amended motion states some ten grounds.

At the argument upon the amended motion for new trial, the defendants stated that they would confine themselves to the first, fourth, fifth, and seventh grounds stated in the amended motion.

Before addressing itself to these matters, the court wishes to consider briefly the grounds for new trial which were not argued, because so much has been said and written about this case, especially in relation to some of these contentions, that the law upon them should be stated.

The contention that "the defendants came into court without benefit of counsel, and were not advised of their right to counsel as provided by law" is utterly without substance. The only requirement of statute is the provision of §2151.35 R. C. that the court shall permit a child to be represented by an attorney-at-law. The child was in fact represented by counsel, so the statutory requirement was met. Defendants had several weeks time in which to provide themselves with counsel, and failed to do so.

The argument that "the Court required defendants to go forward when no evidence had been offered against them, and to be cross-examined contrary to law" is contrary to both law and fact.

"Generally, in most cases of direct contempt, the judge needs no evidence since he himself is the percipient witness, 11 O. Jur 2d 155.

"5. Upon such trial it is competent for such judge to take judicial notice of pertinent facts connected with the transaction which come within the cognizance of his own senses." Myers v. The State, 46 Oh St 473, 22 N. E. 43, 15 Am. St. Rep. 638.

However, the testimony of the Executive Secretary of the Child Welfare Board was offered, and defendants were given the opportunity of cross-examining him, but declined to do so.

Assuming, although the contrary is arguable (Bloomberg v. Roach, 43 Oh Ap 178, Syl. 8), that the defendants could not be cross-examined the record shows that the Court, in accordance with the provisions of §2705.05 R. C., that it should "hear any answer or testimony that the accused makes or offers" permitted those of the parties who desired to

do so to say what they wished about the matter. To say that defendants were cross-examined is ridiculous.

The claim that there were "irregularities in the proceedings * * * and abuse of discretion by which defendants were prevented from having a fair trial" is completely untenable. From the very beginning of this action the defendants have taken every possible advantage of the informality which is customary in Juvenile Court and authorized by §2151.35 R. C. There is a great difference between informality and irregularity, as counsel should well know. The only discretion which the Court has in this case is as to the disposition of the child, and whether or not the Court has abused it, it clearly appeared at the time of the hearing that the child was in exactly the same position that he was before the action was commenced. In fact, therefore, there has been no effective exercise of any discretion whatsoever by the Court, much less any abuse of discretion.

The catch-all ground of "errors of law occurring at the trial" does not require any comment.

The ninth and tenth grounds are that "the judgment and orders of the Court herein deprive defendants of their liberties without due process of law as guaranteed by the 14th Amendment of the Federal Constitution" and "* * * interferes with and infringes the 'inalienable right' of defendant to worship God 'according to the dictates of their own consciences' as assured them by **Article I, Section 7, Ohio Constitution.**"

These grounds make good copy for newspapers, and set the hearts of emotional laymen to beating wildly. However, learned counsel for the defendants stated in argument that they were not making any claim that the defendants' constitutional rights were in any way infringed. They could not do otherwise.

The first amendment to the Federal Constitution is not by its very terms applicable here, for it provides that

"Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof."

No act of Congress is involved in this case. The Supreme Court of Ohio has held that the first ten amendments to the Federal Constitution are not controlling upon the states. **Prescott v. State, 19 Oh St 184** at 187. **Stockum v. State, 106 Oh St 249.**

It may be suggested that the four to three decision of the United States Supreme Court in Board of Education v. Barnette, 319 U. S. 624, 87 L. ed. 1628 upsets the doctrine of these cases, and applies the inhibitions of the first amendment against actions by Congress to actions by the state legislatures through the force of the 14th amendment. However, there is no resemblance between the facts of that case and the facts of this case. In the Barnette case, there were ceremonies in school which violated the defendants religious convictions. Here there is no claim that any particular part of the school program is wrong, it is the compulsory school attendance that is objectionable.

"Statutes making the education of children compulsory have become very general in the United States, and the constitutionality of the type

of statute which has usually been enacted is beyond dispute * * *."
39 A. L. R. 477.

The Ohio compulsory education statutes have been held constitutional in **Parr v. State, 117 Oh St 23, 157 N. E. 554.** In **State v. Hershberger, 103 Oh Ap 188,** the Court holds, on **page 192:**

"No question of religious freedom is presented in this case. By requiring the defendant to provide for the proper education of his children, his right to worship according to the dictates of his conscience is in no way abridged, and his right to instruct his children in the tenet of his chosen faith is unquestioned."

From the earliest times, the provisions of **Article I, Section 7, Ohio Constitution** with respect to the rights of Conscience have been held not to justify a refusal to submit to the civil law.

"Acts evil in their nature, or dangerous to the public welfare, may be forbidden and punished, though sanctioned by one religion and prohibited by another; but this creates no preference whatever, for they would be equally forbidden and punished if all religions permitted them. Thus, no plea of his religion could shield a murderer, ravisher, or bigamist; for a community would be at the mercy of superstition, if such crimes as these could be committed with impunity, because sanctioned by some religious delusion." **Bloom v. Richards, 2 Oh St 387 at 392.**

While the Supreme Court in the quotation above refers to major crimes, in **State v. Marble, 72 Oh St 21** this rule was applied to so innocuous a matter as the charging of fees by a Christian Science practitioner, a matter which the legislature recently made legal.

A man cannot extend his religious freedom until it infringes upon another person's civil rights. Ginerich v. Swartzentruber et al, 22 N. P. (N. S.) 1.

It is abundantly clear, both in reason and in authority, that the defendant's rights to freedom of conscience and to worship as they please are not infringed by the Ohio school laws, or the actions of this court.

Having disposed of these preliminaries, we come to the main arguments of the defendants:

1. The Court had no jurisdiction of the person of the defendants, or either of them.

4. Defendants were punished and jailed for indirect contempt by disobeying an order of court when no order had ever been issued to them personally or in any cause of action to which they or either of them were parties, or of which they had notice.

5. The alleged written charges exhibited against defendants state no cause of action for contempt against the defendants, or either of them, and by reason of this defect the court had no jurisdiction of the parties.

7. The finding and judgment of the court is not sustained by sufficient evidence and is contrary to law.

This whole situation has become so beclouded with emotions and technicalities that the real problem and issue involved are in danger of being lost.

It must be constantly kept in mind that by an unchallenged and a now unchallengable order, the child of the defendants has been made a ward of this Court, and committed temporarily to the custody of the Wayne County Child Welfare Board. **Sec. 2151.55 R. C.**, provides that

"The principle is hereby recognized that children under the jurisdiction of the juvenile court are wards of such court, subject to the discipline and entitled to the protection of such court, which may intervene to safeguard them from neglect or injury, and to enforce the legal obligations due to them. **To this end such sections shall be liberally construed.**" (Emphasis by the court.)

Now, if these sections are to be liberally construed, what is the effect of **§2151.28 R. C.** that

"After a complaint * * * has been filed * * * the court shall issue a citation * * * requiring the parents * * * to appear personally and bring the child before the court at the. time and place stated. If the person cited is other than the parents * * * then the parent * * * shall also be notified of the case and of the time and place of hearing."

Granted that the complaint is in form ex parte, and is captioned "In the Matter of Sammy Hershberger, alleged neglected child" yet it is clear from this section that the Court cannot proceed unless the parents are in court by citation or notice. In other words, regardless of the form of the action, the parents of the child are in fact parties to it. This view is reinforced by the provisions of **§2151.36 R. C.**, which provides that the court can order the parent to pay for the care of a child that has been committed, enter a money judgment, and enforce it by execution.

The record shows clearly that the defendants were served with citations in the present case not once, but twice; that on January 29th they were, in response to the second citation, personally before the Court, with the child, and with counsel.

On that day, the Court made the order that is set forth above, in accordance with the provisions of **§2151.35 R. C.**

"The Juvenile Court may conduct its hearings in an informal manner, * * *. If the court finds that the child is * * * neglected, * * * it may by order entered proceed as follows:

"(B) Commit the child temporarily or permanently to the * * * county child welfare board * * *."

All of these statutes must be given meaning, they must be harmonized, and they are to be liberally construed. If this is done, the conclusion is inescapable that the defendants were in fact parties to the order which was made on January 29, the court had jurisdiction of their persons, and they were fully apprized of the judgment and order of the court.

The defendants assert in argument that that order was not an order requiring the defendants to do or refrain from doing anything; that it merely fixed the status of the defendants' child; and therefore until the court issued an order to some officer to convey the child to the Child Welfare Board, there was no order which the defendants could be guilty of contempt by violating.

494

This argument concedes the point that defendants were actually parties to the proceeding, but seeks to avoid the charge of contempt by saying they were required to do nothing.

This argument overlooks the provisions of §2705.02 R. C. which says, "A person guilty of any of the following acts may be punished as for a contempt:

"(A) Disobedience of, or resistance to, a lawful writ process, order, rule, judgment or command of a court or an officer;"

In other words, contempt, even under the statute, is not exclusively a matter of disobeying an order. It also involves resistance to a judgment.

Defendants conceded that there is a valid judgment here, which changed the status of the child from the child of his parents to a ward of the court temporarily committed to the Child Welfare Board.

The agent of the Board went to the home of the child, and came back without the child. Was he required at his peril to attempt to drag the child from the home of the defendants, or to seek a search warrant or other process? The child had been committed to the Board of which he was the agent. Although he made a reasonable effort to assert the changed status of the child, the defendants admitted in open court, at the hearing on March 12, that up to the time they left their home, the child was still there. Does the argument that their conduct was entirely passive belie the fact that the judgment of the court committing the child to the Child Welfare Board was successfully resisted, and rendered entirely nugatory? It does not.

The only alternative to the finding of this court that the defendants are in contempt is to hold that an order of a juvenile court, duly entered on its journal, making a child a ward of the court and committing the child to an agency authorized to receive it is not binding on the parents of the child unless they choose to obey it.

The juvenile court is a court of record, and exercises the power and jurisdiction of such a court. Sec. 2151.07 R. C. The power to punish for contempt is an inherent power of the court. State ex rel. Turner, v. Albin, 118 Oh St 527.

"* * * the language of the statute (§2705.02 R. C.) is not exclusive, and the Legislature has not in terms placed any limitation upon the court to extend and expand the legislative rule to other acts either of similar or dissimilar nature." Ibid, p 531.

This court will not yield to hairsplitting contentions and fine spun webs of technicalities that leave it impotent to carry out its judgments.

It is the holding of the court that the defendants are parties to the action involving their son; that they have resisted and are resisting a lawful judgment of this court; that this court has power, both inherently and under the statutes to punish such resistance as for a contempt of this court; and that until the Wayne County Child Welfare Board has in fact the custody over the child Sammy Hershberger that it has in law, the defendants will continue to be in contempt of this court.

The notice and order to show cause which were served upon the

defendants were sufficient to inform any sensible person of the charge that was laid against him; the evidence was sufficient to sustain the charge, and the defendants are not to be excused for their misconduct.

The contention that the defendant Salome Hershberger should not be held in contempt because under the provisions of §3103.02 R. C., the husband is the head of the family, is ingenious, but hardly seems applicable to the present situation.

In the case of Imler v. Imler, 8 N. P. (N. S.) 409, 20 O. D. (N. P.) 671, the court holds that the husband's right as head of the family to select a place and mode of living does not give him the right to require his wife and children to leave a place where the children have advantages for schooling to go to a place where there are no such advantages. It would therefore seem that in the present case, where the schooling of the child is the primary question, the defendant's wife's actions are her own, since she has the right to defy the husband's authority in order to secure her child's education.

However, there is another statute in the same chapter of the Revised Code, which seems dispositive of this question. **Sec. 3103.08 R. C.** reads as follows:

"Neither husband nor wife, as such, is answerable for the acts of the other."

It is true that under the decisions prior to the enactment of that statute, it was presumed that a wife who committed a crime in the presence of her husband acted under coercion, although it should be recalled that this presumption was rebutted by proof that the wife had acted voluntarily. **Tabler v. State, 34 Oh St 127 (Syl 1).** It seems obvious that the enactment of §3103.08 R. C., was intended to and did abrogate these ancient and primitive rules. Again referring to §2151.28 R. C., which requires both parents to be served with citation before the Juvenile Court can gain jurisdiction of a child, if the contentions of counsel that the provisions of §3103.02 R. C. make the father all and the mother nothing. be granted there would be no necessity for citing both parents into court.

There is also the provision of §3109.03 R. C. which provides that the husband and wife "shall stand upon an equality as to the care, custody, and control of such offspring * * *." The court cannot select one statute and twist it to establish a preconceived notion and ignore all the other statutes which are in pari materia with it. While it may suit counsel and the newspapers to argue that these defendants are living in the seventeenth century, this court and the legislature are not. This case must be determined under the laws of today, which regard both husband and wife as individuals, with individual rights and wills, and marriage as a partnership between equals. A woman no longer ceases to be a person when she enters into a marriage; she is no longer so merged with her husband that in the eyes of the law her existence as an individual is at an end. Both defendants stand on an equal footing in this matter, under our present law, and the defendant Salome Hershberger is just as culpable as her husband.

The amended motion of the defendants for a new trial is overruled.